ANTON DOSKOVITCH, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND PUBLIC SERVICE RAILWAY COMPANY, RESPONDENTS.

Argued June 24, 1927—Decided June 29, 1927.

An auto bus which runs between two specific termini, and which accepts, for hire, passengers of a limited class, but without dis-

crimination within that class, comes within the provisions of the "Kates act" (*Pamph. L.* 1916, *p.* 283), as amended by *Pamph. L.* 1926, *p.* 219, and the operator of such bus must secure municipal consent, and the approval of the board of public utility commissioners, to such operation.

On *certiorari*.

Before Mr. Justice CAMPBELL, sitting alone, pursuant to the statute.

For the prosecutor, *George L. Burton.*

For the respondents, *John O. Bigelow* and *George H. Blake.*

The opinion of the court was delivered by

CAMPBELL, J. This writ brings up for review a judgment of the board of public utility commissioners of February 7th, 1927, effective April 1st, 1927, finding that prosecutor was unlawfully operating an auto bus, commonly called jitney, on a route between and including South River and Milltown, New Jersey, without the approval of the board of municipal consents granted to him for said operation, and ordering and directing the prosecutor to discontinue the operation of such auto bus on said route unless and until municipal consents for such operation are granted and the same are approved by the board.

Prosecutors' bus is operated between South River and the plant or factory of the Michelin Tire Works, at Milltown. The route is from and through South River, through East Brunswick township and to and into Milltown. Prosecutor has a municipal consent or license in South River but not in East Brunswick township or Milltown. The consent or license of South River has never been presented to, or approved by, the board of public utility commissioners.

The contention of the prosecutor is that his bus carries no persons other than employes of the Michelin plant and that no stops to receive or discharge passengers are made after leaving South River until reaching the Michelin works, and

that on the return trip employes of this plant are received as passengers and no stops made to receive or discharge passengers until South River is reached, and that the stops then made are only for the purpose of discharging the passengers who were received at the Michelin works.

There was testimony before the board from which it may be argued that passengers other than Michelin employes are accepted, namely, others whose destination is the Michelin plant, and also that stops are made to discharge passengers at points between South River and Milltown. But I have not concerned myself with this proof which may be said to be in dispute.

The contention of the prosecutor is that his bus is not operated as a jitney, and does not come within the terms of the so-called Kates act, the last enactment respecting which is the amendment of 1926. *Pamph. L.* 1926, *p.* 219. The particular contention is that passengers are not indiscriminately accepted and discharged, but that on the contrary his passengers, each day, are practically the same persons who ride from their homes in South River to their work at the Michelin plant in Milltown and return to their homes in South River at the conclusion of their day's work.

I am of the opinion, however, that such operation comes within the terms of the act of 1926. Putting the situation in the best possible light, prosecutor accepts as passengers any and all persons, without discrimination, except that they be Michelin employes, and transports them between the termini, South River and Milltown, for a compensation or fare.

The act defines the vehicle, and its use, which comes within its terms and provisions, as follows:

"The word 'auto bus,' as used herein, shall mean and include any automobile or motor bus carrying passengers for hire which is held out, announced or advertised to operate or run, or which is operated or run over any of the streets or public places in any municipality of this state, and indiscriminately accepts and discharges such persons as may offer themselves for transportation either at the termini or points along the way or route on which it is used or operated or may be running. Nothing herein contained shall be con-

strued to include taxicabs, hotel buses or buses employed solely in transporting school children and teachers."

That passengers are limited to a certain class does not, other statutory conditions existing, take the vehicle or its use out of the control contemplated by the statute.

In *Fort Lee Transportation Co.* v. *Edgewater,* 99 *N. J. Eq.* 850, the Court of Errors and Appeals held that a motor vehicle operated under a club plan to transport members and their families from a point outside the municipality to a point therein, making no stops therein, at a fare of twelve rides for ninety cents, together with monthly dues, was within the terms of *Pamph. L.* 1916, *p.* 283, of which *Pamph. L.* 1926, *p.* 219, is an amendment.

In *Bridgeton* v. *Zellers,* 100 *N. J. L.* 33, the bus owner was operating between Bridgeton and Millville, dividing the route into six fare zones and charging for five only, so that no fare was paid within Bridgeton, and yet this court held that such operation was within the statute (*Pamph. L.* 1916, *p.* 283, *supra*), and such holding was affirmed by the Court of Errors and Appeals. 101 *N. J. L.* 206.

I think it may be said that this statute, having many purposes, has amongst all of them two prominent ones, namely, protection of the public in safety of carriage, and compensation for the use of public highways over which the vehicles are operated, and that if a vehicle and its use come fairly within the terms of the statute, no restriction, plan or limited use, whether for the purpose of evasion or otherwise, will be sufficient to take it out of the control and operation of the statute.

As before indicated, the vehicle of prosecutor comes within the statute, and the writ of *certiorari* must be dismissed, with costs.